Argued January 20, affirmed January 26, 1915.

## FREDERICK & NELSON *v.* BARD.*

(145 Pac. 669.)

**New Trial—Trial—Improper Verdict—Correction.**

1. Where under the pleadings the utmost possible verdict that could have been rendered for defendant was the difference between the principal and interest due on the notes sued on and $950 pleaded by him as a counterclaim, but the jury returned a verdict for defendant against plaintiff for $950, the proper remedy was to submit the case to the jury for correction of the verdict, as provided by Section 150, L. O. L., and not to grant a new trial.

**New Trial—Judgment—Vacation by Court Sua Sponte.**

2. Where the court has entered judgment on an erroneous verdict, it has jurisdiction *sua sponte* to set it aside and grant a new trial.

[As to power of court to grant new trial of its own motion, see note in Ann. Cas. 1914A, 412.]

From Multnomah: HENRY E. McGINN, Judge.

Department 2. Statement by MR. JUSTICE BURNETT.

This is an action by Frederick & Nelson, a corporation, against W. H. Bard, and is the second appeal in this case. The following statement is adapted from the former opinion reported in 66 Or. 259 (134 Pac. 318):

"The plaintiff, Frederick & Nelson, a corporation, declares in the usual form upon two promissory notes executed and delivered to it by W. H. Bard, amounting together to $750 of principal, besides interest, as stated in the complaint. The answer admits the actual execution of the notes, but makes two affirmative defenses. The first is, in substance, that the notes were executed without consideration, specifying under this head that the plaintiff had agreed to give him 10 per cent commission on the sale of all goods by it, either to himself or brought about by his procurement, that by virtue of that contract he had earned com-

---

*For cases passing upon the right of the court to grant a new trial on its own motion, or on grounds other than those urged by the moving party, see note in 40 L. R. A. (N. S.) 291.    REPORTER.

missions largely in excess of the notes in question, and that when they were executed the plaintiff falsely represented to him that he had already been credited and paid those commissions in the settlement of an account which the defendant's former wife had contracted with the plaintiff, and which the defendant had assumed and agreed to pay, and that the amount represented by the notes was due from the defendant to the plaintiff over and above the commissions. The second affirmative defense is also based on the alleged contract for commissions, and is interposed as a counterclaim to the amount of $950. The reply traverses the new matter of the answer."

After the trial the jury, on October 28, 1913, returned into court the following verdict:

"We, the jury in the above-entitled action, find for the defendant therein, our verdict being that he have judgment against the plaintiff in the sum of $950.00." [Signed by the foreman.]

The following occurred after the judge had read the verdict:

"The Court: Gentlemen, that verdict cannot stand. I am not going to allow this verdict to stand; this man here wrote letters time and time again in which he admitted he owed these notes; now, he is a lawyer, and he knew perfectly well what he was doing, and if anybody thinks I am going to allow those people over there to be robbed in this manner, they will get fooled. This man lives in Portland here, and strong influences have been brought to bear here, and it don't make any difference; this verdict will not stand. This man owes that money, and every man on this jury knows it. Gentlemen, you will be discharged from further consideration of this case. There will be a new trial granted. It takes 13 men to rob anybody in this court, and I want that understood. That man owes that money, and he will pay it if I have anything to say about it.

"A Juror: If the court please, we will retire and correct the verdict, but that is the way we understood it.

"The Court: This verdict cannot stand, and a new trial will be granted.

"Mr. Brewster: I will ask at this time that a new trial be granted.

"The Court: A new trial will be granted; that man owes that money and he will pay it if I can bring it about.

"Mr. Watrous: Will the court allow us to save an exception?

"The Court: Yes, but file that verdict and set it aside—this thing of allowing men to make promissory notes and beat them, just because they can beat them, has got to end, and it is going to end right here now."

Judgment for the defendant on the verdict was entered in the usual form, and afterward the judgment here set out was entered by direction of the court:

"This cause having heretofore been taken under advisement by the court, and the court now being fully advised in the premises, of its own motion finds that a new trial should be granted the plaintiff, on the ground that there is no evidence to support the vertrict rendered therein. Wherefore it is considered, ordered and adjudged that the verdict heretofore rendered in said cause, and the judgment entered thereon, be and the same hereby are canceled, set aside and held for naught, and that a new trial be granted plaintiff.

"Dated October 31, 1913."

From this latter judgment the defendant appeals, assigning as error, in substance, that the Circuit Court was wrong in not giving the jury further instructions and in setting aside the verdict and judgment on its own motion.                AFFIRMED.

For appellant there was a brief over the names of *Mr. Robert E. Hitch, Mr. James E. Fenton* and *Mr. Martin Watrous,* with an oral argument by *Mr. Hitch.*

For respondent there was a **brief over** the names of *Mr. J. H. Hendricksen* and *Messrs. Brewster & Mahaffie,* with an oral argument by *Mr. Hendricksen.*

MR. JUSTICE BURNETT delivered the opinion of the court.

It is manifest from the facts in the case that the essence of the dispute between the parties was whether the defendant was entitled to commissions as he claimed and, if so, whether the plaintiff had given him credit in the settlement resulting in the execution of the promissory notes upon which the action was brought. There is no dispute but what the defendant signed the notes as stated. Under such circumstances, as disclosed by the pleadings, the utmost possible verdict that could have been rendered for the defendant was the difference between the amounts of principal and interest due on the notes and the sum of $950, urged by him as a counterclaim.

1. The verdict returned was almost as incongruous as one would have been awarding to the plaintiff the return of the property purchased from it. In short, the verdict was not within the range of the pleadings, which are the standard by which the issues between the parties must be adjusted. The problem presented by such a verdict should have been solved under the provisions of Section 150, L. O. L.:

" * * If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out."

Without commenting on the weight of the testimony or giving any intimation of what he thought should be the verdict, the trial judge, after explaining the limits of the verdict as controlled by the pleadings, should have either sent the jury out again, or allowed it to correct the verdict. It was not necessary to visit upon the parties the expense of a third trial.

2. The refusal of the court to allow an amendment of the verdict before filing was clearly erroneous; but, the jury having been discharged, it is too late to correct the mistake. Consequently the question is resolved into this: Can a court of its own motion set aside an erroneous judgment which it has rendered? On principle this is one of the inherent powers of a court of justice, even on its own motion. Judicial tribunals are not mere parliamentary bodies, and are not in all cases dependent for their authority on written motions of the parties. On their own initiative they may interpose to preserve the rights of parties and to uphold the law. In *De Vall* v. *De Vall,* 60 Or. 493 (118 Pac. 843, 120 Pac. 13, Ann. Cas. 1914A, 409, 40 L. R. A. (N. S.) 291), the Circuit Court set aside a judgment and verdict on grounds not mentioned in the motion interposed for that purpose. This action was approved in an elaborate opinion by Mr. Chief Justice EAKIN. The same doctrine was enunciated by Mr. Justice MOORE in *Smith & Bros. Typewriter Co.* v. *McGeorge,* 72 Or. 523 (143 Pac. 905), in this language:

"When the trial court, within the time allowed, discovers that such a mistake of law has been made, it may, *sua sponte,* or on motion, correct the error by setting aside the judgment and granting a new trial, thereby avoiding the necessity of and the expense that would be incurred by an appeal."

In effect the court in *De Vall* v. *DeVall,* 60 Or. 493 (118 Pac. 843, 120 Pac. 13, Ann. Cas. 1914A, 409, 40 L. R. A. (N. S.) 291), set aside the judgment on its own motion, for it proceeded on grounds not suggested by either party to the litigation. In the situation resulting from the court refusing to allow the jury to correct its verdict in the case at bar, it was no error to overturn the judgment, for the verdict was incompatible with the issues in the case.

The decision of the Circuit Court is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.