Argued March 11, affirmed April 8, 1924.

# JOE OBERMEIER *v.* MORTGAGE COMPANY HOLLAND-AMERICA, JOHN VAN ZANTE AND ESTHER MATTISON.

(224 Pac. 1089.)

**Landlord and Tenant—Lessee may Repudiate Contract or Bring Action for Damages Against Lessor Withholding Possession.**

1. As a general rule, where possession of the demised premises is withheld by the lessor from lessee, the latter may maintain ejectment against any person who wrongfully withholds possession from him, or, if possession is withheld by lessor or one claiming under him, the lessee may at his option repudiate the contract or bring an action for damages against the lessor for breach of his agreement.

**Evidence—When Testimony of Witness at Former Trial is Admissible.**

2. Under Section 727, subdivision 8, Or. L., the testimony of a witness deceased or out of the state, or unable to testify, given on a former action, suit or proceeding, or trial thereof between the same parties relating to the same matter, may be given on the trial.

**New Trial—Trial Court has Inherent Power to Grant—May be Granted on Own Motion or on Grounds not Specified by Movement if Prejudicial Error Appears.**

3. The trial court has inherent power to grant a new trial, and whenever the court timely discovers that error has been committed to the prejudice of a party it may correct the error by setting aside the judgment and granting a new trial, either on its own motion or on motion of the prejudiced party and on grounds not specified in the motion.

**New Trial—Not Necessary for Court to Specify Grounds.**

4. It is not necessary for the trial court to specify in the order granting a new trial the grounds or reasons therefor.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

This is an action for the breach of a lease of a farm in Washington County, Oregon. Issues were joined and a former trial of the case resulted in a verdict and a judgment in favor of plaintiff for $2,500. This judgment was reversed upon appeal and a new trial ordered. See *Obermeier* v. *Mattison*, 98 Or. 195, for

a full statement of the case.  Upon a retrial of the cause a verdict was rendered in favor of the defendants, upon which judgment was entered.  Upon motion of plaintiff the Circuit Court set aside the verdict and judgment and granted a new trial.  The defendants, the Mortgage Company Holland-America, a corporation, and John Van Zante appeal.

AFFIRMED.

For appellants there was a brief and oral arguments by *Mr. Albert H. Tanner* and *Mr. John Van Zante.*

For respondent there was a brief and oral argument by *Mr. C. M. Idleman.*

BEAN, J.—The facts of the case necessary to state here are as follows: On the 13th of November, 1917, the defendant John Van Zante executed and delivered to plaintiff Joe Obermeier a lease of a farm known as the Johnson Farm for the term of three years, commencing November 30, 1917, and ending on November 30, 1920.  The lessee covenanted and agreed to pay the lessor as rental therefor $1,500 upon the signing of the lease, $500 on or before November 5, 1918, and $900 on or before November 15, 1919.  Obermeier paid the $1,500 as agreed.

At the time of the execution of the lease the defendant John Van Zante held title to the land as the agent and trustee of the defendant Mortgage Company, having purchased the same at a foreclosure sale by the Mortgage Company under a mortgage on the real estate executed by W. O. Johnson and wife to the Mortgage Company.  At the date of the lease the time for redemption from the sale by W. O. Johnson had not expired, and Johnson was instrumental in

procuring the lease to be made, and by a writing appended thereto, consented to the lease. On the twenty-eighth day of November, 1917, a deal was consummated by the interested parties whereby W. O. Johnson conveyed his equity in the premises to his daughter, defendant Esther Mattison, and defendant John Van Zante, as the agent and trustee of the Mortgage Company conveyed the premises to Esther Mattison, subject to the right of redemption of Johnson, in consideration of the amount due upon the Johnson mortgage, including costs of foreclosure and expenses of sale. In making the transfer to defendant Esther Mattison by Van Zante with the approval and assistance of the Mortgage Company, the $1,500 collected of plaintiff in advance as rental was taken in consideration and credited to Esther Mattison, thereby reducing the consideration of the sale, which was about $13,000 to $11,500.

When plaintiff Obermeier attempted to move on to the leased premises, about the 30th of November, 1917, he found them occupied by a former tenant and was unable to obtain possession, of which he notified the defendants. It appears that it was expected that the premises would be vacated in two or three days. On January 11, 1918, there was a conference between plaintiff and defendant Van Zante, and the defendant Esther Mattison and the defendant the Mortgage Company Holland-America, by and through its representative John Van Zante, when it was mutually agreed and understood between all of the parties thereto that plaintiff should receive the sum of $100 in liquidation of all damages suffered by him on account of not having been placed in possession of the premises by the defendants; and a modification of the lease was entered into between the plaintiff and de-

fendant Esther Mattison, which instrument is set out in full in the record and marked Exhibit "B." This instrument contained a paragraph which reads as follows:

"It is further understood and agreed that as a full and complete settlement of any delay in obtaining possession of said premises and as a full settlement of any controversy that might grow out of said matters between Joe Obermeier, the lessee, and John Van Zante or the lessor, named herein, that said lessee accepts the sum of one hundred ($100) dollars cash upon the signing of this modification of the lease, the receipt whereof is hereby acknowledged."

It is alleged and contended by plaintiff that the above-quoted paragraph of the agreement of January 11, 1918, denominated in the record as Exhibit "B" was based upon the representation and understanding that he "could at once enter upon the possession thereof" meaning the leased premises.

After the cause was remanded and before the second trial the plaintiff amended paragraph VIII of the complaint so as to allege fraud and to read as follows:

"This plaintiff further alleges that the said statements made by these defendants in which they stated that the said premises were unoccupied excepting by themselves, and that the plaintiff herein could at once enter upon the possession thereof, were false and untrue and that these defendants knew the same to be false and untrue at the time they made them, or they were made recklessly by them as of their own knowledge without knowing whether or not they were true, and that they were made for the purpose and with the intent to defraud plaintiff herein and to induce him to sign the said instrument attached hereto and marked Exhibit 'B' and that the plaintiff believed the said statements and relying upon them executed the said instrument marked Exhibit 'B'; that the

111 Or.—2

said premises at the date of the execution of the said exhibit marked Exhibit 'B' and attached hereto, were not free from the possession of any and all persons excepting these defendants, but that the said premises were at that time occupied by other persons and that this plaintiff has made several attempts to take possession of the said premises but has not been able to do so on account of the said premises and the build: ings thereon being occupied by other persons, and that it is impossible for this plaintiff to take possession of the said premises, and has been at all times since the said 12th day of January, 1918, and that the defendant Esther Mattison, has begun an action in forcible entry and detainer in the Circuit Court of the State of Oregon for Washington County against Helma Roe, Jones Arthur Roe and Herbert Roe, who are in possession of the said premises claiming to hold under a prior leasehold, and that the said action is pending in said Court undetermined.''

Within two or three days after the execution of Exhibit ''B'' the plaintiff attempted to take possession of the leased premises, but found Mrs. Helma Roe and her family in possession of the premises with livestock thereon. Of this the plaintiff informed defendant Van Zante. Van Zante told the plaintiff that any legal steps necessary to obtain possession from the Roes would have to be taken by Mrs. Mattison. Thereafter, on January 24, 1918, Mrs. Mattison instituted an action of forcible entry and detainer against the Roes to obtain possession of the premises, in which judgment was rendered in favor of the plaintiff and against the Roes on February 23, 1918. Until that time the defendants had wholly failed to place plaintiffs in possession of the farm. Prior to the latter date the plaintiff, claiming that he had been deprived of the privilege of obtaining possession of and preparing the land for cultivation, instituted this action for damages for a breach of the lease. The

alleged breach of the implied covenant of the lease occurred after the transfer of the reversion by the original lessor to Mrs. Mattison.

Upon the trial of the cause as between plaintiff and defendant Van Zante and the Mortgage Company the controversy seems to have waged in regard to the validity of Exhibit "B." Plaintiff testified in substance that at the time of the execution of the agreement, Exhibit "B," he was told by defendant that he could obtain possession of the premises at once, and he understood they were then vacant. The defendants' claim is to the effect that they informed the plaintiff that the Roes promised to move off the farm in two or three days; and on behalf of Mrs. Mattison he was told that if Mrs. Roe did not vacate, an action would be commenced against her and possession would be obtained without cost to plaintiff at once, or within two or three days.

In the former opinion, rendered in this case, it was held that there was an implied covenant in the lease that the lessor would protect the lessee in the quiet enjoyment of the premises for the term of the lease, citing *Edwards* v. *Perkins,* 7 Or. 149, also it was there said, at page 206 of the report:

"It might well be added that it is unthinkable that a man should enter into a contract as the lessee of real property, if it could be anticipated, or within the remote probabilities, that a lawsuit would be required to enable him to enter upon the enjoyment of his term. We therefore adopt the doctrine that a lease of real property, and the covenant of quiet enjoyment, involves the obligation upon the part of the lessor to place the lessee in possession of the premises at the time fixed for the commencement of the term."

1. As a general rule, where possession of the demised premises is withheld by the lessor, from the

lessee, he may maintain an action of ejectment against any person who wrongfully withholds the possession from him; or if possession is withheld by the lessor, or one claiming under him, the lessee may at his option repudiate the contract or bring an action for damages against the lessor for a breach of his agreement: 24 Cyc. 1051.

"Where, by failure to terminate a prior tenancy, the lessor is unable to give right of entry at commencement of a lease with covenants of title and quiet enjoyment, the lessee is not bound to accept the premises on a subsequent tender; * * 24 Cyc. 1051 note.

In 15 R. C. L., Section 259, page 764, it is stated "the burden of a covenant for quiet enjoyment until broken is held to run with the reversion so as to be binding upon the transferee of the reversion."

In note 7, L. R. A. 1915C, page 220, we read thus: "A covenant for quiet enjoyment runs with the land and is binding upon the transferee of the reversion." See, also, Tiffany on Landlord & Tenant, p. 881 et seq.; *Derisley* v. *Custance,* 4 T. R. 75; *Hartcup* v. *Bell, Cab & El.* 19; *Coulter* v. *Norton,* 100 Mich. 389 (59 N. W. 163, 43 Am. St. Rep. 458); *Rising Sun Lodge* v. *Buck,* 58 Me. 426; *Frederick* v. *Callahan,* 40 Iowa, 311. In the former opinion of this court in this case, 98 Or. 207 (192 Pac. 275), Mr. Justice BENSON said:

"If, as a matter of fact, the execution of the instrument was free from the taint of fraud, then, as a matter of law, the agreement consists of a new contract of leasing, with an express attornment to a new landlord, and a final settlement of all claims against the original lessor; a condition which would thrust responsibility for further delay in obtaining possession of the land upon the defendant Mattison. The judgment of nonsuit in favor of the defendant Mattison prevented the proper submission of these questions to the jury, and was therefore erroneous."

In an opinion upon a petition for rehearing on pages 211 and 212, Mr. Justice Burnett said:

"As delineated in the complaint, the substance of the matter is that a lease has been made between Obermeier and Van Zante. The only remaining liability resting on the latter was to install the former in possession. Pending this, Mattison bought the land subject to the lease already made. To this Obermeier assented by making a new lease with Mattison for the same land. He did more. For $100 the receipt of which was acknowledged, he released Van Zante. He accepted that sum 'as a full and complete settlement of any controversy that might grow out of said matter between said lessee and John Van Zante.' It would seem that this amounts to a novation. By taking title to the land subject to the lease and contracting for the modification of that lease, Mattison became bound by the resultant agreement, which also Obermeier accepted by joining therein. The release of Van Zante by payment of $100 exonerated him and leaves Obermeier and Mattison as the only parties concerned about anything occurring after the new lease was formulated."

In 24 Cyc. 1145 we read:

"Delivery of possession of the demised premises by the lessor to the lessee is necessary to the obligation to the latter to pay rent; and the rule is the same whether the lessor refuses or is unable to give possession."

The fact that the rent was paid by Obermeier, the lessee, in advance would not change the rule and in order for the defendants to be entitled to retain the rental so paid the lessor must deliver the possession of the demised premises to the lessee. If the $1,500 rental had not been paid in advance, and the lessee had obtained possession and kept the place, undoubtedly under the facts in the case Mrs. Mattison would, as the new landlord, have been entitled to col-

lect the amount due as rental from Obermeier, the lessee. Upon the second trial of this cause the court instructed the jury that the plaintiff could not recover from the defendant Mattison. Plaintiff and appellant each reserved an exception to this part of the charge.

The motion for a new trial was based upon the following reasons:

"Errors in law occurring at the trial and excepted to by the plaintiff herein.

"Insufficiency of the evidence to justify the verdict and that the said verdict is against law."

2. The trial court did not indicate upon what ground the new trial was granted. Over the objections and exceptions of plaintiff the court permitted the testimony of witness Sarah Roe given on the former trial of this case to be read as evidence. It appeared at the time she was sick and unable to go to court and testify in the case. It appeared from a physician's certificate and from the testimony of the mother of the witness that she was suffering from a nervous disorder and unable to safely attend court and testify, but that at times she went from her residence to the doctor's office. It seems she was able to have her deposition taken and it is contended on behalf of plaintiff that her deposition should have been taken. Plaintiff also contends that by reason of the amendment of the complaint so as to read as quoted above, alleging fraud inducing the execution of Exhibit "B" and the amendment of the answer of defendants, the issues are not the same as they were upon the former trial; and the defendants urge the contrary. Section 727, Or. L., subdivision 8, provides that the testimony of a witness deceased or out of the state, or unable to testify, given in a former action,

suit or proceeding, or trial thereof, between the same parties, relating to the same matter, may be given on the trial.

As to the first question involved, that is, in regard to the inability of the witness to appear in court and testify, where the issues are the same, the question is settled by our former decisions. In *Laam* v. *Green,* 106 Or. 311, 319 (211 Pac. 791), it was shown that the witness was sick and unable to leave his house therefore, unable to testify at the second trial. It was held that the testimony of the witness taken at the former trial of the case was competent. In *Beard* v. *Royal Neighbors,* 60 Or. 41 (118 Pac. 171), after referring to Sections 727, 826, 932, L. O. L., it was held that:

"The effect of this statute is to make the testimony of a witness at a former trial, as quoted by the official reporter, substantially the deposition of a witness, which may be read at any subsequent hearing of the case, provided the witness is without the State."

See 10 R. C. L. 966, Section 143. The question as to whether the testimony of the witness Sarah Roe given upon a former trial of the case was relating to the same matter or whether the issues on the second trial were the same as at the first trial is a more difficult question. It would seem from the record the first trial of the cause but little, if any, attention was paid to the matter of misrepresentations made by defendants at the time of the execution of Exhibit "B." There was at the most but a mere reference to the matter in the complaint, and the amended complaint upon which the cause was tried the second time, set up fraud on the part of defendants as an inducement to plaintiff to assent to the paragraph above

quoted regarding the settlement between himself and Van ·Zante.

In the testimony of Sarah Roe as given upon the former trial which was read in evidence she stated, in substance, that when the plaintiff came to the house on the leased land, in December, 1917, in a conversation with her brother the plaintiff stated that he was dissatisfied with the place "and that if we [meaning the Roes] would stay on the place he would have more show of getting his money back." The plaintiff, in effect, says that defendants falsely represented that he could take possession on January 11, 1918. Defendants claim, in substance, that plaintiff could have taken possession, but solicited the Roes to remain on the land. We think the testimony of Sarah Roe had a bearing upon the question of fraud, as to the correctness of the representation, and that plaintiff should have a fair and ample opportunity to cross-examine the witness on this point after the amendment of the pleadings.

Plaintiff testified to the effect that when he went to move on to the farm, November 28, 1917, the Roes were still there, and told him they would not move off for two weeks; that about two weeks later plaintiff and Van Zante and an agent of the Mortgage Company went to the farm and the Roes said it would be two weeks more before they could get another place and move off.

Mrs. Helma Roe, a witness for defendant, who had a former lease of the premises and was in possession thereof at the time of the execution of the lease November 13, 1917, testified to the effect that she told plaintiff when he first came there that she would get off the place as soon as she could; that on January 11, 1918, she told defendant Van Zante over the phone

she would "get off the place in a couple of days." On cross-examination she testified that she moved off as soon as she could get a place to move to.

It is stated in the briefs of both appellants and of plaintiff that after the case was remanded to the lower court the plaintiff amended his complaint by alleging that he was induced to enter into the agreement, Exhibit "B," by fraud and misrepresentation, in that it was falsely represented to him the premises were then vacant, and that he could take possession of the premises at once. Plaintiff testified that he understood the premises were then vacant and that he could immediately enter into possession thereof. There is but little, if any, material difference between the testimony of plaintiff on this point and that on behalf of defendants, which was to the effect that the Roes would be off the place in two or three days, or defendant Mattison would put them off at once without any expense to plaintiff. The main thing was for the plaintiff to obtain possession of the farm and if that had been accomplished in two or three days after January 11, 1917, there would have been a substantial compliance. But neither of the defendants cleared the way for Obermeier to enter into possession of the premises until February 24, 1918.

After the arrangement of January 11, 1918, the original lease was still in existence, whether it was modified depended upon the validity of Exhibit "B," and thereafter it was incumbent upon the lessor to put plaintiff in complete possession of the demised premises within a reasonable time. The testimony indicated this was not done. When the original lease was executed Mr. Johnson had an equity of redemption in the leased premises. The lease was made at his suggestion and he consented thereto. In the event

that he had redeemed the land the lease and the rent reserved therein would have inured to his benefit. Johnson assigned his equity of redemption to his daughter, defendant Esther Mattison, and she then stood in his shoes. She redeemed the premises from the foreclosure sale. She obtained a conveyance of the farm from Van Zante subject to the lease to plaintiff, and thereby became interested in the lease and entitled to any benefits that might accrue as rentals thereunder. Defendant Mattison, at the time of the conference of the parties on January 11, 1918, agreed and undertook to cause the premises to be vacated so that plaintiff could take possession at once, or within two or three days. This she attempted to do, but was unsuccessful until plaintiff repudiated the lease. Under all the circumstances of this case Mrs. Mattison assumed the liability of permitting the plaintiff to take and enjoy the possession of the premises within a reasonable time after January 11, 1918. This statement has no reference to the question of the release of defendant Van Zante, discussed in the former opinion in this case.

According to the former opinion and the law above referred to, it was error to instruct the jury that plaintiff could not recover of defendant Mattison under any condition.

3, 4. From a reading of the entire record we are led to believe that the matter of the admission of testimony of Sarah Roe was not the sole reason for allowing a new trial. Under all the facts in the case, we are unable to say that the record of the trial was free from error or that the trial court erred in granting a new trial. The trial court has inherent power to grant a new trial and whenever the court timely discovers that error has been committed to the preju-

dice of a party it may correct the error by setting aside the judgment and granting a new trial, either upon its own motion or upon motion by a party and upon grounds not specified in the motion: *De Vall* v. *De Vall,* 60 Or. 493, 500, 501 (118 Pac. 843, 120 Pac. 13, Ann. Cas. 1914A, 409, 40 L. R. A. (N. S.) 291); *Rudolph* v. *P. R. L. & P. Co.,* 72 Or. 560, 569 (144 Pac. 93); *Smith Typewriter Co.* v. *McGeorge,* 72 Or. 523 (143 Pac. 905); *Frederick & Nelson* v. *Bard,* 74 Or. 457, 461 (145 Pac. 669); *Archambeau* v. *Edmundson,* 87 Or. 476, 487 (171 Pac. 186). It is not necessary for the court to specify in the order granting a new trial the grounds or reasons for the same: *Cathcart* v. *Marchfield,* 89 Or. 401, 405 (174 Pac. 138). Upon the question of granting a new trial, see *Veazie* v. *Columbia & Nehalem River R. R. Co., ante,* p. 1 (224 Pac. 1094).

The judgment of the lower court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BROWN and McCOURT, JJ., concur.