Argued May 17; affirmed June 7; petition for rehearing
denied September 6, 1949

# NEAL *v.* HAIGHT
### 206 P. 2d 1197

*Allan G. Carson,* of Salem, and *C. A. Degnan,* of Crescent City, California, argued the cause for appellant. With them on the brief was Wallace P. Carson, of Salem.

*Sam Kyle,* of Albany, argued the cause for respondent. With him on the brief were Weatherford & Thompson and Willis, Kyle & Emmons, all of Albany.

Before LUSK, Chief Justice, and BRAND, ROSSMAN and HAY, Justices.

BRAND, J.

This case was tried in the circuit court of the state of Oregon for Lincoln County. The case was tried by the Honorable Carl E. Wimberly, Judge of the Second Judicial District which district includes both Lincoln and Douglas Counties.

On 26 September 1947 verdict for the defendant was rendered by the jury. On 10 October 1947 the trial judge who resides at Roseburg, county seat of Douglas County, signed the judgment for the defendant and caused it to be transmitted to the county clerk of Lincoln County at Toledo. The judgment was entered as of 26 September, the date of the verdict. Concerning the order for a new trial we quote from the Bill of Exceptions which was duly settled and signed by the trial judge:

"Thereafter, the undersigned judge, of his own motion, and in chambers at Roseburg, Oregon, dictated and caused to be prepared, and on 10 October 1947, at Roseburg, Oregon, caused duly to be transmitted by U. S. Mail to the clerk of the above-entitled court, at Toledo, Oregon, the following order: * * *"

(Then follows the order which sets forth the reasons for the granting of a new trial, the last paragraph of which is as follows:)

"It is, therefore, hereby ORDERED, ADJUDGED and DECREED by the court upon its

own motion that the verdict rendered by the jury in this cause and the judgment entered herein on this day be and the same are hereby set aside and held for naught and that the plaintiff be and hereby is granted a new trial of this cause.

"Dated October 10, 1947.

"(No Signature)

"Circuit Judge"

The Bill of Exceptions continues as follows:

" * * * with the accompanying written and signed request of the undersigned judge that said order, among others, be filed by said clerk. Said order was received by said clerk in the U. S. mail on 14 October 1947, and on said day was by him filed; and said order ever since has been, and now is, on file in the above-entitled court and cause in the condition aforesaid. Such failure to sign said order was an oversight upon the part of the undersigned judge.

"On said 10 October 1947, at Roseburg, Oregon, the undersigned judge also caused a carbon copy of said order (with his name typewritten in over the signature line) duly to be transmitted by U. S. Mail to counsel for each party."

■■ It might be suggested that we know of no right to appeal from a "form of order" and that unless there was an order there could be no appeal. Defendant's theory is that no order for a new trial was ever made. Upon that theory there would be nothing from which to appeal. On the other hand, if there was an order made, then the notice of appeal should more properly have specified that the appeal was taken from the order.

■■ We must presume that the county clerk, in accordance with official duty and the instructions of the trial judge, caused the "form or order bearing date

October 10, 1947, unsigned, and filed in the above-entitled court" to be entered in the journal of the said court. O. C. L. A., § 2-407 (15); O. C. L. A., § 93-927 (6), (9); *Allen et al. v. Levens et al.*, 101 Or. 466, 471, 198 P. 907, 199 P. 595. Our statute provides that a notice of appeal shall be filed within sixty days from the entry of the judgment, order or decree appealed from. O. C. L. A., § 10-803, as amended by Laws 1943, ch. 119. If there was no entry in the journal, there could be no appeal and our only duty would be to dismiss for want of jurisdiction. At the outset we must observe the presumption that a judicial record even if not conclusive does still correctly determine or set forth the rights of the parties, O. C. L. A., § 2-407 (17) and that a judge acting as such in this state is presumed to be acting in the lawful exercise of his jurisdiction. O. C. L. A., § 2-407 (16).

The defendant makes two contentions: First, that a new trial may lawfully be granted only by an order of court as distinguished from an order of a judge, and consequently, that even if the order had been signed by the judge it would still be invalid because made in chambers; and second, that an unsigned order, though filed in accordance with the written request of the trial judge and entered in the journal, is a nullity in any event. We will first consider whether a judge in this state has the power upon his own motion effectively to grant a new trial by making and signing in chambers an order to that effect and causing it to be properly filed and entered in the journal of the court. The statute provides:

"If a new trial is granted by the court on its own motion, the order shall so state and shall be made within 30 days after the filing of the judgment. Such order shall contain a statement setting

forth fully the grounds upon which the order was made, which statement shall be a part of the record in the case. In event an appeal is taken from such an order, the order shall be affirmed only on grounds set forth in the order or because of reversible error affirmatively appearing in the record.'' O. C. L. A., § 5-806.

■■ The fact that the statute refers to the granting of a new trial by the court does not amount to any determination that a new trial cannot be granted by the judge in chambers on his own motion. As a background it must be borne in mind that at common law, trial courts had inherent power to grant new trials upon their own motion. 39 Am. Jur., New Trial, § 9.

And also that: ·

"The practice of doing much of the business of courts of general jurisdiction at judges' chambers, both in term time and in vacation, was firmly established at common law. * * *'' 30 Am. Jur., Judges, § 36.

We quote with approval the following two statements from American Jurisprudence:

"There is a well-marked distinction between a judge and a court. There are many cases, however, in which the words 'court' and 'judge' are used interchangeably and indiscriminately. It is not infrequent in legislation that the word 'judge' is used when reference is manifestly to a court, and 'court' is frequently construed to mean 'judge' when necessary to carry into effect the legislative intent. * * *'' 30 Am. Jur., Judges, § 4.

" * * * It is to be remembered, however, in this connection, that the term 'court' may be interpreted to mean a judge in vacation or at chambers where it is necessary to effect the intention of the legislature. * * *'' 30 Am. Jur., Judges, § 36.

Our statute provides:

"A judge may exercise, out of court, all the powers expressly conferred upon a judge as contradistinguished from a court, and not otherwise." O. C. L. A., § 13-605.

A broad statutory authority has been given to the judges of this state as is indicated by the following statutory provisions:

"Any judge of the circuit court of the state of Oregon, whether at the time he is in his own district or in some other judicial district of the state, may, in chambers, grant and sign defaults, judgments, decrees, interlocutory orders, provisional remedies, make findings, decide motions, demurrers *and other like matters relating to any such judicial business coming before him* from his own or from other judicial districts of the state in which such judge has presided in such matters; and he is authorized and empowered to hear, in chambers, contested motions, demurrers and other similar matters pending within his own county or counties, at any place within his district, and, upon stipulation of counsel, such judge may try and determine any issue in equity or in law where a jury has been waived, hear and decide motions, demurrers and other like matters, in chambers, at any place within the state where such judge may happen to be, relating to any and all such judicial business coming before him from his own or from any other judicial district of the state in which such judge has presided in such matters, as fully and effectively as though granted, ordered, decided, heard and determined in open court in the county where such motions, demurrers, matters or issues may be pending, and all such orders, findings, judgments and decrees issued therein, granted or rendered, and other than orders not now required to be filed and entered with the clerk before becoming effective, if signed other than in open court, shall be transmitted by the judge to

the clerk of the court within the county wherein such matters are pending, whereupon the same shall be filed and entered and become effective from the date of filing thereof." (Italics ours.) O. C. L. A., § 13-202 as amended by Laws 1947, ch. 237.

■ The provisions of O. C. L. A., § 13-202 as amended authorize the trial judge to make an order granting a new trial upon his own motion in chambers. The authority to decide motions which is granted by the statute would clearly include the authority to decide a motion for a new trial by making an order to that effect, and we think that the making of an order for a new trial upon the court's own motion comes within the scope of the authority to decide "other like matters relating to any such judicial business coming before him from his own" judicial district.

We are dealing here with the power of courts of general jurisdiction and of judges of such courts. The granting of a new trial upon the court's own motion is a "like matter" to the deciding of a motion for a new trial.

The defendant next contends that the order is a nullity because unsigned by the trial judge. The state of the authorities has been set forth as follows:

"The cases are divided as to the effect of the omission of the signature of the judge or clerk from an order issuing from the court. The majority hold that the omission of such signature, if required by statute, is a matter of substance, rendering the instrument void. Other decisions hold that the omission of the signature of the clerk of the court or other official issuing an order otherwise properly authenticated is, at the most, a defect which renders the order voidable, and that it may be amended nunc pro tunc. The conflict on this point is due in most part to different statutory requirements as to

the necessity of signature, since the cases which hold that a signature is necessary arise, for the most part, in jurisdictions where the statutory requirement in that respect is mandatory. In the absence of a statute or rule of court requiring it, the failure of the judge to sign the journal entries or the record does not affect the force of the order granted." 37 Am. Jur., Motions, Rules, and Orders, § 28.

The statutes of this state which bear upon the issue are as follows:

"Every direction of a court or judge made or entered in writing and not included in a judgment or decree, is denominated an order. An application for an order is a motion." O. C. L. A., § 10-501.

"A judicial record is the record, official entry, or files of the proceedings in a court of justice, or of the official act of a judicial officer, in an action, suit, or proceeding. O. C. L. A., § 2-714.

"The journal is a book wherein the clerk shall enter the proceedings of the court during term time, and such proceedings in vacation as this Code specially directs." O. C. L. A., § 10-1003.

The statute defining the powers and duties of each county clerk as to the county for which he is clerk provides:

"(4) To file all papers delivered to him for that purpose in any action, suit or proceeding in the court;

" * * * *

"(6) To keep the journal of the proceedings of the court at its terms, and under the direction of the court to enter its orders, judgments, and decrees;

" * * * *

"(8) To exercise the powers and perform the duties conferred upon him elsewhere by this compilation or other statute;

"(9) In the performance of his duties, to conform to the direction of the court." O. C. L. A., § 93-927.

Both parties cite *Robinson v. Phegley*, 93 Or. 299, 177 P. 942, 178 P. 799, 182 P. 373. In that case the court quoted O. C. L. A., § 10-501, supra, and said:

"Clearly the order is *made* when it is in writing and signed by the judge, but in our opinion it is not effective until delivered to the clerk. There is no provision of the statute requiring the entry of orders of this character in the journal and the practice in that respect varies in different districts of this state."

In that case an order was signed within the time required but was not filed until the expiration of the required time. The court said:

"* * * We think this was a sufficient filing. The order was actually in the record with the intent that it should be effective and the filing of a paper is not merely the indorsement which the clerk makes upon it, but the fact that it is placed in his custody with the intent to make it effective."

In *Oxman et al., v. Baker County*, 115 Or. 436, 234 P. 799, 236 P. 1040, the court said:

"* * * The statute requires a judgment to be entered upon the date of the rendition of a verdict: Section 201, Or. L. This was done. It is objected that this order was not signed by the judge of the court, but the signature of the judge to such an order is not necessary. His duties cease with the allowance of the order; the actual entry of it in the records is a clerical duty of the clerk: 33 C. J. 1213; 15 R. C. L. 585, 586; Long v. Minto, 81 Or. 281, 285 (158 Pac. 805). * * *"

In *State v. Ritchie,* 144 Or. 430, 25 P. (2d) 156, the court said:

"\* \* \* In part, the first assignment is based upon the fact that the journal entry which comprises the record of defendant's arraignment, waiver of time to plead and entry of a special plea, contains unfilled spaces for dates and the name of the county wherein the court was held, and is not signed by the judge. This record, however, is supplemented by a transcript of testimony certified by the official court reporter for the 13th judicial district and by subsequent journal entries from which we readily ascertain what proceedings were had and the correct date thereof. Defendant was in no wise prejudiced by the manner in which this journal entry was made. Moreover, it was the act of the clerk and not the court and could have been cor rected upon motion.

"There is no statute requiring the judge of a circuit court to sign the journal entries of such court. Long v. Minto, 81 Or. 281 (158 P. 805); Oxman et al. v. Baker County, 115 Or. 436 (234 P. 799, 236 P. 1040). Even in those jurisdictions having statutes requiring such signature, it is generally held that such statutes are directory only. See annotation in 30 A. L. R. 715."

In *Long v. Minto,* 81 Or. 281, 158 P. 805, a petition was made for a writ of habeas corpus and was allowed by a circuit judge. Petitioner contended that he was illegally restrained in the state penitentiary and assailed the commitment "by alleging that the paper is illegal, for the reason that the circuit judge never signed any judgment or order of commitment." The court said:

"\* \* \* The replication admits that the warden holds the commtiment, but the petitioner claims that it is not a legal commitment, because neither the journal of the Circuit Court where the judgment

was rendered nor the commitment itself was signed by the circuit judge. The petitioner, however, cannot successfully maintain his contention. The judge is not required to sign the journal of the Circuit Court, nor is it his duty to sign the commitment. The records of the Circuit Court include a journal: Section 582, L. O. L. The 'journal' is defined by Section 584, L. O. L., as a book 'wherein the clerk shall enter the proceedings of the court during term time, and such proceedings in vacation as this Code specially directs.' Section 591, L. O. L., makes the clerk the custodian of the records and files of the court. A judgment is given by the act of the court in pronouncing sentence upon a person convicted of a crime, and when the judgment is given 'the clerk must enter the same in the journal, stating briefly the crime for which the conviction has been had * * *': Section 1578, L. O. L.''

In *Foreman v. Foreman,* Utah (1946 Dec.), 176 P. (2d) 144, certain verbal orders were made by the court for the violation of which a party was convicted of contempt. The court said:

''Appellant attacks the contempt order upon the ground that the order of which a litigant is found guilty of disobeying must be made in writing to support the contempt.

''Section 104-42-1, U. C. A. 1943 states:

'' 'Every direction of a court or judge, made or entered in writing and not included in a judgment, is denominated an order. An application for an order is a motion.'

''Counsel for the defendant in the quoted portions of the record asked the court for an order requiring the return of the $3200 in United States Government Bonds and in response to this request the court made the order indicated above and said order was reduced to writing by the clerk of the court as a minute entry. We hold that this is all

that Section 104-42-1 requires. We have an order of the court 'entered in writing' by the clerk of the court on February 15, 1946. To hold that the order had to be 'made in writing' we would have to ignore the plain meaning and language of our statute—'made' and 'entered' are in the alternative. See 37 Am. Jur. 513, Sec. 29 and notes.''

It is clear under the provisions of O. C. L. A., § 13-202 as amended, supra, an order made by the trial judge as distinguished from an order of the court does not become effective until it has been filed by the clerk, but the order in this case was filed by the clerk and we must presume that it was also entered in the journal. The statute construed in the case of *Foreman v. Foreman,* supra, is identical to O. C. L. A., § 10-501, supra. We adopt the construction placed upon that statute in the Foreman case. A direction by a judge is ''made'' when it is in writing and signed by the judge, as stated in *Robinson v. Phegley,* supra, but the words ''made'' and ''entered'' are in the alternative and it follows that every direction of a judge ''entered in writing and not included in a judgment, is denominated an order.'' O. C. L. A., § 10-501, supra. In the Foreman case verbal orders were apparently made in open court. In *Spivey v. District Court of Third Judicial District in and for Ada County et al.,* 37 Idaho 774, 219 P. 203, the plaintiff had a judgment and there was a motion for a new trial. The court delivered to the clerk ''for the purpose of making a minute entry'' a letter which said in part, ''I * * * therefore will have to deny the motion * * *''. The clerk made an entry on the minutes, in part as follows: ''the court at this time rendered its decision and denied the motion for a new trial.'' The entry was never signed by the judge. Apparently no order was ever signed by him. The letter

to the clerk, which was signed by the judge, was not entered in the minutes, the only entry being the clerk's own notation based on the letter. The court quoted the Idaho statute which is identical to O. C. L. A., § 10-501. The court said:

"* * * We conclude that the act of the judge in ordering the clerk to make a minute entry in accordance with his letter of March 24, and the making of such an entry by the clerk in the minutes, prove an order of that date denying a new trial."

The Spivey case is cited by the defendant but we think it supports the position of the plaintiff. It is undoubtedly true that good practice requires that a judge should sign orders of this type made by him in chambers.

An order when filed by the court and entered in the journal imports verity. *Allen et al. v. Levens et al.*, supra; *Peterson v. Beals et al.*, 102 Or. 245, 201 P. 727. In the absence, therefore, of any proceeding for the purpose of correcting the record, it must be held that the unsigned order entered in writing by the county clerk under the instructions of the judge comes within the definition of an order under the provision of O. C. L. A., § 10-501.

Counsel for the defendant asserts that the court:

"* * * should not have sat mute and silent throughout the trial concerning the alleged fatal deficiency, then submitted the question to the jury, then when the result went counter to his own ideas of justice, substituted those ideas for the solemn finding of the jury, and then, without notice to defendant's counsel or giving them any opportunity to be heard (see: 39 Am Jur 37, § 9), attempted to set that verdict aside. * * *"

In this case the new trial was granted on account of error of law in instructing upon contributory negligence when the trial court found that there was no evidence thereof to be submitted to the jury. It was necessary only for the court to consider the testimony which he had already heard at the trial and to apply a rule of law. We have no occasion to decide whether a judge must in every case hear argument or receive briefs before granting a new trial on his own motion. In this case the verdict was received on, and judgment entered, as of 26 September 1947. The Bill of Exceptions certifies that on 29 September the plaintiff, by mail, served a motion for new trial upon the defendant and that on 30 September 1947 he filed the said motion accompanied by an attached memorandum of authorities in support thereof with the clerk of the court. The record does not show whether the court knew of the motion or considered the brief or whether the defendant submitted a brief, or for that matter, whether the motion was or was not argued in chambers before the judge. It will be recalled that this case was tried in Lincoln County, that the judge resides in Douglas County, and that counsel in the case reside in neither county. We find nothing in the record to support the quoted assertion in defendant's brief. In *United Railroads of San Francisco v. Superior Court in and for San Mateo County et al.,* 197 Cal. 687, 242 P. 701, the only question for decision arose upon the following facts: A motion for a new trial had been filed. The judge had heard argument thereon in open court and thereafter went to his home where he made and signed a written order for a new trial and mailed it to the clerk with a letter requesting that the order be filed. The order was filed by the clerk. It was held that the order was valid. On the basis of the California statute

it was held that a new trial could only be granted by a court as distinguished from a judge. Speaking of the distinction between a court order and a judge-made order, the court said:

"* * * It may perhaps be doubted that there is any fundamental distinction between these two other than this: That an order of court may lawfully be made only upon notice, whereas an order at chambers may be made ex parte. * * *"

There is a dictum concerning the necessity that orders be signed by the judge, but that question was not involved in the case, nor was the order made on the court's own motion. The case cited by the defendant is not controlling here.

In *State v. Lindeman,* 64 N. D. 518, 254 N. W. 276, 93 A. L. R. 1442, the judge in open court denied a motion for a new trial. His remarks were taken in shorthand by the court reporter. No order was filed and no entry made in the journal. The court cited the statute which is identical to O. C. L. A., § 10-501 and held that there was no order from which an appeal could be taken. There is a dictum as follows:

"* * * If the order is made in open court it is not complete and no part of the record until it is entered in the minutes of the court as provided by section 10907. Unless it is reduced to writing, signed by the judge, and filed with the clerk or entered by the clerk in the minutes of the court as provided by law, there is nothing to appeal from."

This case recognizes the alternative which is contained in O. C. L. A., § 10-501: If made (that is, signed) by the judge and filed or if entered in writing by the clerk, the order is made.

30

■ We have examined all of the authorities cited by the defendant, but find none of them controlling in view of our own statutes and decisions. We hold that a valid and therefore an appealable order was made, granting a new trial on the court's own motion.

The next contention of the defendant is that a court ought not to grant a new trial for an alleged error which was invited or acquiesced in by the party who would be benefited by such action of the court. In the case at bar the parties stipulated that the trial court should give certain specified instructions on the subject of contributory negligence as a bar to the action. The instructions were given and the alleged contributory negligence of the plaintiff was argued to the jury by defense counsel. After the jury had retired they returned to the courtroom and requested that the instruction on contributory negligence be repeated. The court repeated the instructions in substantially the same language as previously given and amplified the same. They were what might be called standard instructions upon that issue. The last sentence of the instruction to the jury on their return to the courtroom was as follows:

"* * * If on the other hand that there was negligence as charged in the further and separate answer of defendant and that that negligence proximately caused or proximately contributed in any degree, however slight, to his own injury, then the plaintiff would not be entitled to recover."

If there was no substantial evidence of contributory negligence, then the giving and repeating of instructions was prejudicial error. It is true that the plaintiff invited and acquiesced in the giving of the original instructions. At the time of the repetition and embellishment of the instructions counsel for the plaintiff were

absent from the courtroom, having returned to Albany, Oregon. Had the plaintiff appealed from the judgment for defendant, assigning as error the giving of instructions on contributory negligence, he would have had no standing to urge the error in this court since he both invited the instruction and took no exception thereto, but a different rule applies when by reason of substantial error the trial court or judge, upon his own motion, grants a new trial.

*Spokane County v. Pacific Bridge Co.*, 106 Or. 550, 213 P. 151, was an action for damages for breach of a construction contract. The court, by its instructions, authorized the jury to award to the plaintiff damages for certain defects concerning which the plaintiff had waived the right to claim damages. This court held that the trial court, upon its own motion, was authorized to set aside the verdict and judgment and grant a new trial. We quote:

"The authority of a trial court to set aside a verdict and judgment and grant a new trial is not restricted to the cases indicated in the foregoing statement of plaintiff's contention, but extends to cases where, by reason of some misapplication of the principles of law, to which no exception has been taken, or in consequence of some inadvertence to which attention has not been called, the court is satisfied that a party has not had his cause properly presented:"

■ The power of the trial court or judge to grant a new trial upon its own motion, setting forth the grounds upon which the order was made is not dependent upon the existence of reversible error as upon appeal to this court, but is dependent upon the existence of prejudicial error, and upon appeal to this court such an order may be affirmed, although no objection or exception

was taken in the trial court. *Weinstein v. Wheeler,* 135 Or. 518, 295 P. 196, 296 P. 1079; *Frederick & Nelson v. Bard,* 74 Or. 457, 145 P. 669. In *Timmins v. Hale,* 122 Or. 24, 256 P. 770, the court said:

> "\* \* \* In respect to the necessity of there having been a ruling in the lower court and an exception taken which is requisite to a reversal upon appeal, there is a clear and well-recognized distinction between the power of the trial court on the one hand to set aside a judgment and grant a new trial, and the power of the Supreme Court to reverse a judgment upon appeal, for it has been repeatedly held by this court, that it is not error alone, but error legally excepted to that constitutes grounds for reversal:"

We hold that error waived by failure to object or invited does not thereby impair the inherent judicial power to grant a new trial if prejudicial error has occurred in the proceedings. We have held that this court will affirm an order for a new trial if good cause exists, even though the motion therefor does not correctly specify the grounds for the motion, and that we may affirm for reasons different from those specified in the order of the trial court. *King v. Ditto,* 142 Or. 207, 19 P. (2d) 1100; *Johnson v. Updegrave,* 186 Or. 196, 206 P. 2d 91.

Thus far we have assumed that there was proper ground for the granting of a new trial. We now examine that proposition in the light of the evidence. If there was substantial evidence that the plaintiff was guilty of contributory negligence, then the order was erroneously issued. If there was not, then the order must be affirmed.

The defendant was driving a Chevrolet two-ton truck to which was attached a flat bed semi-trailer. He

was driving in a southerly direction and approaching a tramway of several hundred feet in length over which it was necessary for him to drive. At the point of the accident the tramway was ten feet above the ground. At its southerly end the tramway forks, one road extending southwesterly and one southeasterly. At the fork a traveling crane was operating which rendered it impossible for the defendant to drive over the tramway and along the southwesterly fork thereof to his destination. The defendant stopped his truck several hundred feet north of the obstruction. He was a stranger who had only once before traversed the area. Plaintiff was an experienced employee at the locality. He was on his way to work in the morning and came upon the defendant whose truck was stopped near the north end of the elevated ramp. Defendant told plaintiff that he wanted to get through to the shingle mill. Plaintiff testified:

"A I told him I thought he could get through. That that crane was operating and was digging dirt but I thought they would let him through. And he said, 'Get in.' And so I did. I stepped inside the cab."

The defendant then drove down the elevated ramp to within about sixty feet of the crane which obstructed his passage. The truck was stopped. Plaintiff testified as follows:

"A I says, 'I will go see.' I was following up what I told him, that I thought he could get through.

"Q Did you get out?

"A Yes, sir.

"Q Where did you step when you got out of the truck?

"A Well, I stepped down on what space was left between the running board and the edge of the tramway.

"Q Then what did you do?

"A I stepped ahead, aiming to — I think about two steps anyway — aiming to see the operator. I knew Mr. Hadley and Mr. Seavey. And I felt something hit me in the back all of a sudden.

"Q How many steps did you step?

"A About two steps or a little better.

"Q In what direction?

"A Going south.

"Q With reference to the truck it would be the front or rear?

"A I was going to the front of the truck.

"Q And how near to the front of the truck had you reached?

"A Practically up I think almost in the act of going around the end of it.

"Q The front end?

"A Yes, sir.

"Q And which direction were you looking?

"A I was looking ahead, south, and to the crane.

"Q At the crane operator?

"A Yes, sir.

"Q All right. Then what happened?

"A Well, I was — I felt a shock and of course it seemed to me like I was rolling this way (indicating). I was evidently turning in the air and I was rolling this way over, sideways."

The defendant testified as follows: " * * * And Mr. Neal told me he worked there and that if I wouldn't mind, he would ride down with me and tell them to get off the tramway." Concerning the events which occurred after the defendant had driven to within sixty feet of the crane, he testified as follows:

"Q Now, tell what happened?

"A Well, come down there the distance from where the shovel was, and I stopped and Mr. Neal was going ahead to tell them to get out and he

started out of the cab, and closed the door and as near as I know about that time the shovel started to move, and I started to follow it up.

"Q Did you see him after he got out of the cab?

"A Not as I remember of.

" * * *

"Q Did he say anything when he got out?

"A Not that I know of. Not that I remember of, not after he got out. When he was getting out he was going ahead to tell them to move the shovel.

"Q What did he say to you?

"A Not any more than he was going to have the shovel moved. That's all I remember.

"Q Then he opened the door, did he?

"A Yes.

"Q Did you have a running board?

"A Yes, sir.

"Q Did you see him step on the running board?

"A I didn't pay a bit of attention. He evidently must have stepped on it.

"Q What are the physical facts about it? If he had taken two steps forward would you have seen him?

"A Seems like I would have.

"Q Could you have seen him?

"A I could have seen him all right on the side of the truck. Certainly I would have noticed him.

" * * *

"A As near as I can figure it about the time he went out the door and closed the door I looked ahead and the shovel started to move and I just assumed he had stepped off to the side, and I started to move the truck on ahead. It would be the matter of a minute maybe.

"Q You didn't hold a clock on that?

"A No.

Attention is next directed to the condition of the ramp at the point where the plaintiff dismounted from

the truck to go forward for the purpose of inducing the operators of the crane to clear the road. There is some divergence in the testimony as to the width of the tramway at the place of the accident. There was no fence on either side of the elevated roadway. There were wheel guards consisting of three-by-eight timbers bolted upright along the outside edges of the tramway. Witness Hadley who was operating the crane had never measured the tramway but thought the road was ten feet in width and that the clearance between the guard rails would be about nine feet four inches or nine feet six inches. The defendant never measured the width of the tramway, but testified, "it was a little wider than eight feet all right. It is not very wide." Plaintiff testified that the width between the guard rails was eight and one-half or nine feet. Witness Stephens who had helped build the tramway thought that the over-all width could be less than ten feet. Plaintiff testified:

"A I believe to be right honest about it there is very little over eight feet between the guards, taking up the plank, then on top of this plank comes a three-inch—a four-inch—I wouldn't say as to the width. I think it is eight inches high for a guard rail. That takes four inches on each side and it fit in down close to eight feet because I just repaired a little of it yesterday, put a board on where it was rotted out, and I never measured it and I noticed that the wheels, they pass close to the guard on both sides, a truck coming down there. They don't rub it but they pass close to it.

"Q On both sides?

"A On both sides. They don't go clear out but they are out pretty well towards it.

"Q You mean the duals?

"A Yes, that's right.

"Q Not the front?

"A No, the duals behind. That's the trailer.

"Q Well, don't you think those ties are about ten feet long?

"A I worked on the bridge and I would say that those ties that were put in were nine feet. I do. Yes, I think they were nine feet."

The defendant's truck had single front wheels but dual wheels behind. Defendant testified that he believed the width between the truck wheels from center of tread to center of tread was a little over five feet in the front. The bed of the trailer was seven feet seven inches in width by actual measurement. The outside measurement of the rear dual wheels was not given. Taking the estimates most favorable to the defendant, it would follow that there may have been as much as eleven and one-half inches of clearance between the edges of the truck bed and the low guard rail. In any event, the truck occupied all but twenty-three inches of the tramway between the guards. There is no evidence indicating whether the truck was in the exact center or to the left or right of center. Witness Stephens was brakeman on the crane. He testified as follows:

"Q This truck was what we call a semi-flat bed?

"A That's right.

"Q A tractor and the cab part was on the tractor part?

"A Yes, sir.

"Q And then there was a flat bed behind that?

"A I don't think anybody could have stood on the edge of the railing even if he knew he was going to pull ahead and have clearance for the body of the truck."

He saw the truck when it was waiting for the crane to move, and saw Mr. Neal "standing up alongside the

cab talking to the driver." He did not see the actual collision, but saw the plaintiff as he was falling. He testified:

"A Well, just from the first appearance it looked like the wheels were going to roll over him and he was down on his knees. I seen his lunch pail roll on the walk and just for the instant I thought the truck was going to go right over his body, and then he dove off head first on the ground and I watched him until he hit on the ground."

Witness Hadley was the operator of the crane. He saw the plaintiff when he was just dismounting from the truck but did not continue looking at the truck. He testified:

"Q Were you moving the locomotive crane out of the way of the truck?

"A Yes, I saw them stop back there and Mr. Neal dismounting, and I didn't wait for him to ask me. I moved it."

Stephens testified as follows:

"Q Who first called your attention to Mr. Neal's diving off?

"A I am the first guy.

"Q Did you see that happen? You didn't have to have your attention called to that?

"A Oh, no. I was just happening to look back. I was flagging the truck ahead but when the truck moved ahead, why he took it upon his own to come ahead and when I looked back and see the truck coming ahead and Mr. Neal falling I didn't have to flag him. Sometimes the trucks will stop and wait for a signal before they come ahead, because they don't know, maybe you will move ahead and then move right back in the same position, but as I said he was coming ahead and I knew we were going to be in the clear.

"Q There was no use passing a signal?

"A So we just let him come then."

The undisputed evidence is that the plaintiff had taken not more than two or two and one-half steps before he was hit in the back. He fell from the ramp and landed on his chest upon a sawed-off pile. He testified that he was out of the cab just long enough to take two steps before he was hit. The evidence shows that he was visible to the defendant if the defendant had looked. After plaintiff got out of the cab the defendant "didn't pay a bit of attention", but admitted "I could have seen him all right on the side of the truck." There is no evidence that the defendant received any signal from the crane man to proceed. He simply started when the crane started to move. Plaintiff testified:

"A I did. I know those boys and I had worked with them a long time and they give the signal for the truck to go through. The truck is not supposed to move unless they give him a signal to go. That's one of the things they try to make the trucks observe, is to never make a move to go by without a signal.

"Q Well, of course an outlander coming in wouldn't know that?

"A Well, that's correct I suppose."

In view of the narrow space and of the undisputed evidence that both plaintiff and defendant expected the plaintiff to go forward and ask the crane man to clear the road, and in view of the fact that plaintiff would have been visible to the defendant, we think the plaintiff had a right to assume, in the absence of notice to the contrary, that the truck would not negligently start up when the plaintiff was in the perilous position at the side thereof. We may add that his only notice to the contrary was when he was hit in the back. We find no substantial evidence of contributory negligence, and hold that the trial court properly granted a new trial. The order is affirmed.