WALTERS, C.J.
**554 Plaintiff, the relator and petitioner in this original mandamus proceeding, filed a medical negligence action alleging that two radiologists employed by Radiology Specialists of the Northwest (defendant) were negligent in reading her imaging studies when they examined them in 2013. In 2016, during discovery in that underlying action, plaintiff took the depositions of the radiologists. The radiologists testified to the findings that they had made after examining plaintiff's imaging studies, but, when plaintiff showed the radiologists *414 the studies, they testified that they had no independent memory of reviewing them. When plaintiff then asked the radiologists to tell her what they could now see in those studies, defense counsel instructed the radiologists not to answer. Defense counsel took the position that those questions called for "expert testimony" that is not discoverable under ORCP 36 B. Defense counsel also argued that those questions impermissibly invaded the attorney client privilege set out in OEC 503. Plaintiff filed a motion to compel discovery and sought an order allowing her to ask the radiologists about their current "knowledge and ability to read and interpret" the imaging studies. The trial court denied plaintiff's motion, and she petitioned this court for a writ of mandamus requiring the trial court to grant her motion, or, in the alternative, show cause why it had not done so. This court issued the writ; the trial court declined to change its ruling.
For the reasons that follow, we conclude that the questions that plaintiff asked the radiologists about what they saw in plaintiff's imaging studies in 2016 were relevant under ORCP 36 B; they were reasonably calculated to lead to admissible evidence about the radiologists' treatment of plaintiff in 2013 and what they perceived and knew at that time. We also conclude that those questions do not call for impermissible "expert testimony" and do not invade the attorney client privilege. Consequently, a peremptory writ of mandamus shall issue.
I. FACTUAL AND PROCEDURAL BACKGROUND
The facts necessary to our analysis are uncontested. In April 2015, plaintiff filed a complaint against defendant[1] **555 and alleged that, in 2013, it employed two radiologists-Dr. Bageac and Dr. Divine-who read her computerized tomography scan (CT scan ), bone scans, and plain x-ray films. Plaintiff alleged that the radiologists misread those imaging studies, that their misreading led to an error in staging petitioner's cancer as Stage II rather than Stage IV, and that defendant is liable for the negligence of the radiologists.
In discovery, plaintiff obtained the reports that the radiologists had dictated in 2013 as they read plaintiff's imaging studies, as well as the studies themselves. Subsequently, in 2016, plaintiff deposed the two radiologists. Plaintiff asked each of them about their educational backgrounds and experience, showed them the reports that they had dictated in 2013, and asked them questions about the procedures that they had used and the findings that they had made. Defense counsel permitted the radiologists to answer those questions. For instance, counsel did not object when plaintiff asked Bageac about his finding that "[t]wo focal areas of increased tracer uptake are seen in the right humerus." Bageac answered that that finding means that "within the right humerus there are two areas of concentrated tracer, more than the big round, to the bone." Defense counsel did not, however, permit the radiologists to answer plaintiff's questions about the imaging studies themselves. For instance, when plaintiff's counsel showed Bageac the bone scan that was the subject of his findings and asked what the two white dots on the scan represent, defense counsel instructed Bageac not to answer the question unless he had an independent memory of interpreting the bone scan in 2013. Bageac did not answer plaintiff's question. Plaintiff then asked Bageac whether he knows what a focal area of increased tracer uptake in the right humerus looks like. When Bageac acknowledged that he does, plaintiff asked whether her 2013 bone scan reflects two focal areas of increased tracer uptake in the right humerus. Defense counsel again instructed Bageac not to answer unless he had a specific memory of reviewing the bone scan in 2013, and, again, Bageac did not answer the question.
The deposition of Bageac and the other radiologist whom plaintiff deposed-Divine-continued in the same way.
**556 Defense counsel permitted the radiologists to testify to what they had reported about the imaging studies in 2013 but not to what they saw in those studies at the time of their depositions in 2016. For instance, plaintiff's counsel questioned *415 Bageac about a bright spot in one of the scans as follows:
"[Plaintiff's counsel]: Okay. Do you recognize in No. 1 the bright spot in the middle of this picture?
"[Defense counsel]: Do you have an independent memory of reviewing this study as you sit here today?
"The witness: No.
"[Defense counsel]: Would answering [plaintiff's] question require you to use your expertise, your education and your training and background, as you sit here today, to interpret this study?
"[Plaintiff's counsel]: I'll stipulate that it would.
"[Defense counsel]: Okay. Then object and instruct not to answer, unless you have a memory."
Counsel explained that the basis for her instructions not to answer those questions and questions along the same lines[2] was that, in counsel's view, the questions impermissibly sought expert testimony not discoverable pursuant to ORCP 36 B or called for information protected by the attorney-client privilege.
Plaintiff disagreed, and, after she completed the depositions of the two radiologists, she moved the trial court for an order "allowing her to ask [the radiologists] about their knowledge and ability to read and interpret" plaintiff's 2013 scans and films. Defendant opposed the motion and attached declarations from the radiologists. Bageac stated that he had interpreted plaintiff's nuclear medicine bone study in 2013, and Divine stated that he had interpreted a CT scan of plaintiff's chest, abdomen, and pelvis in 2013. Both radiologists stated that they had "no present **557 recollection" of their interpretations or the images they had interpreted. Further, both stated:
"Since I have no memory of my *** review and interpretation [of the images,] *** my answers would necessarily be based on a fresh examination of the images, and, as such, upon newly formed or created opinions.
"If I am required to answer questions about the images, my answers would necessarily be informed, and affected by, each of the following factors which were not present at the time of my original review:
"a) The knowledge that the plaintiff's breast cancer was initially staged as Stage II and later staged as Stage IV;
"b) The knowledge that a lawsuit has been filed against my former group based in part on my interpretation of the[the studies at issue]; and
"c) Information obtained from my attorneys in defense of this case."
After oral argument, the trial court entered an order denying plaintiff's motion. Plaintiff filed a petition for an alternative writ of mandamus, which this court allowed. The trial court declined to change its ruling, and the parties filed briefs in this court presenting the following arguments.
II. THE PARTIES' ARGUMENTS
Plaintiff argues that ORCP 36 B grants her authority to ask the radiologists about their present knowledge and ability to read and interpret her 2013 imaging studies. She begins her argument with the text of ORCP 36 B(1), which provides:
"For all forms of discovery, parties may inquire regarding any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
*416 **558 Plaintiff contends that ORCP 36 B entitles her to inquire into all relevant matters that are not privileged and that her questions to the radiologists are permitted by that rule and not barred by OEC 503, which governs the attorney-client privilege. Plaintiff contends that she must be allowed a reasonable opportunity to learn about and test the radiologists' expertise as it affected her treatment, and she asserts that she does not seek to discover communications between the radiologists and their counsel.
Defendant acknowledges that the text of ORCP 36 B permits broad discovery. Nevertheless, defendant submits, there are three reasons that the radiologists may refuse to answer plaintiff's questions. First, defendant argues, because the radiologists have no present recollection of reading plaintiff's imaging studies, plaintiff's questions would compel them to formulate a current review and interpretation of those studies and thereby require their "expert testimony." "Expert testimony," defendant asserts, is not discoverable pursuant to "Oregon's well-established discovery rules," set out in two of this court's cases- Stevens v. Czerniak , 336 Or. 392, 84 P.3d 140 (2004), and Gwin v. Lynn , 344 Or. 65, 176 P.3d 1249 (2008). According to defendant, Stevens establishes that, when the legislature promulgated ORCP 36 B, it made a deliberate decision not to permit "expert discovery." However, in Gwin , this court permitted the deposition of an expert witness who had participated in the events at issue. The upshot, defendant contends, is that plaintiff may depose the radiologists, but she may depose them only as "percipient" or "fact" witnesses and may not ask for their "expert testimony." Defendant submits that the testimony that plaintiff seeks to compel from the radiologists is "expert testimony" because it "requires current application of their expert knowledge and training."
Defendant's second argument is that, because the radiologists do not have independent memories of interpreting plaintiff's imaging studies, plaintiff's questions call for testimony that necessarily implicates hindsight, supplemented by information gained since the original reading of those studies. As a result, defendant contends, plaintiff's questions are not relevant or reasonably calculated to lead **559 to admissible evidence and are not within the scope of discovery set out in ORCP 36 B.
Defendant's third and final argument is that the radiologists' testimony is protected by the attorney-client privilege. Defendant contends that the radiologists' current reading of plaintiff's imaging studies would be "affected by" information provided by defense counsel and would therefore implicate OEC 503, the rule governing attorney-client communications.
We take each of those arguments in turn, but we think it helpful to note, at the outset, that defendant's arguments about the reach of ORCP 36 B are interrelated. Our determination that plaintiff's questions are relevant to the radiologists' participation in her care underlies, in many ways, our determination that plaintiff's questions do not constitute "expert testimony" barred by ORCP 36 B.
III. ANALYSIS
A. Defendant's Argument that Oregon Law Precludes "Expert Discovery"
Defendant's first argument is that, together, two of this court's cases-Stevens and Gwin -preclude the discovery that plaintiff seeks. Because those two cases are central to our analysis, we discuss them in some detail.
Stevens was a post-conviction proceeding in which the rules of civil procedure applied. 336 Or. at 400, 84 P.3d 140. The petitioner's counsel had informed the trial court that he intended to offer expert testimony at trial on three issues: "(1) the adequacy of petitioner's legal representation below; (2) whether the conduct of prior counsel conformed to bar disciplinary rules and ethical requirements; and (3) battered women's syndrome." Id. at 394 n. 1, 84 P.3d 140. The trial court ordered the petitioner to disclose the names of the experts he intended to call and the substance of their testimony. Id. at 394-95, 84 P.3d 140. The petitioner contended, and the defendant did not dispute, that the trial court lacked authority to make that order. Id. at 398, 84 P.3d 140. This court agreed. Id. at 404-05, 84 P.3d 140.
*417 As a threshold matter, this court observed that, "in a civil action, a party has no obligation to disclose information **560 to another party in advance of trial unless the rules of civil procedure or some other source of law requires the disclosure." Id. at 400, 84 P.3d 140. Consequently, the court turned to the Oregon Rules of Civil Procedure, in particular ORCP 36 B, to determine whether they granted the trial court authority to order the petitioner to disclose his experts' names and the substance of their testimony. Id. The court acknowledged that the text of that rule, "if read in isolation, could be interpreted to permit expert discovery if it is (1) relevant and (2) not privileged." Id. at 401, 84 P.3d 140. However, relying on two contextual clues, the court explained that that text also could be understood differently. Id. at 401-02, 84 P.3d 140.
First, the court observed that, when the Council on Court Procedures formulated ORCP 36 in 1979, it originally included a subsection (4). Id. That subsection expressly required a party to disclose, upon request, " 'the name and address of any person [that the] party reasonably expects to call as an expert witness at trial and the subject matter upon which the expert is expected to testify.' " Id. (citing Or. Laws 1979, ch. 284, § 23) (brackets in Stevens ). However, the Legislative Assembly amended ORCP 36 and deleted that provision. Id. Second, the court considered the fact that " ORCP 36 essentially tracks FRCP 26(b)" but "omits the specific authorization for expert discovery that FRCP 26(b) includes." Id. at 402, 84 P.3d 140. The court explained:
" FRCP 26(b)(1) defines the 'scope of discovery' in much the same terms as ORCP 36 B(1). FRCP 26(b)(4) then specifically authorizes expert discovery. Although ORCP 36 and FRCP 26(b) contain similar definitions of the scope of discovery, ORCP 36 omits the specific authorization for expert discovery that FRCP 26(b) includes. The presence of a specific provision authorizing expert discovery in FRCP 26 and the omission of a similar provision in ORCP 36 suggest that Oregon intended to depart from the federal model and not authorize expert discovery."
Id. (footnote omitted).
From those clues, the court hypothesized that the legislature had deleted ORCP 36 B(4) because it disagreed with the decision of the Council on Court Procedures "to authorize expert discovery." Id. at 403, 84 P.3d 140. The court acknowledged that there could be an alternative explanation for the **561 deletion: that the legislature had concluded "that specific authorization for expert discovery was unnecessary in light of ORCP 36 B(1), which provides for discovery of any relevant matter that is not privileged." Id. However, given its assumption "that, if the legislature had intended to depart from Oregon's longstanding practice of not allowing expert discovery, it would have said so specifically," the court considered that inference to be a weak one. Id.
The court determined that the text and context of ORCP 36 B did not resolve the question before it, and it looked to the proceedings in the legislature for additional indications of that body's intent. Id. The court described what had transpired as follows:
"Before the legislature, Frank Pozzi appeared on behalf of the council members who had opposed permitting expert discovery. He focused on the increased costs that expert discovery brings and on the peer pressure against testifying that can occur when a party discloses his or her expert's name. Pozzi reasoned that the current system, which he described as not permitting expert discovery, was an efficient and fair way to try civil cases. Garr King testified on behalf of the committee "members who had supported expert discovery; he maintained that disclosure allows the parties to prepare their cases more thoroughly. After both sides explored that debate over several hearings, a majority of the joint committee found the opponents' arguments persuasive and voted to delete the section authorizing expert discovery."
Id. at 404, 84 P.3d 140 (citations omitted). Thereafter, the court explained, the joint committee affirmatively deleted ORCP 36 B(4) and a majority of both houses voted in the favor of the bill, making a "policy choice *418 to continue the practice of not authorizing expert discovery in civil actions in state courts." Id. In Stevens , the court held that that legislative history demonstrated that ORCP 36 B did not authorize the trial court to require the petitioner to disclose his experts' names and the substance of their testimony. Id. at 404-05, 84 P.3d 140.
Defendant cites Stevens for the broad statements made in the course of its discussion-that is, that Oregon has a "longstanding practice of not allowing expert discovery" and that the legislature made a "policy choice to **562 continue the practice of not authorizing expert discovery in civil actions in state courts." Id. at 403-04, 84 P.3d 140. As noted, defendant does not contend that, because the radiologists are expert witnesses, Stevens bars plaintiff from deposing them. Rather, defendant recognizes that, in Gwin , this court interpreted ORCP 36 B to permit the deposition of expert witnesses who have directly participated in the matters at issue in an action. 344 Or. at 67, 176 P.3d 1249. We therefore turn to Gwin and review the court's analysis there.
In Gwin , the defendant in a legal negligence action unsuccessfully sought an order permitting him to depose an attorney, Evers, whom the plaintiffs had retained and designated in court filings as an expert who would testify for them at trial. Id. at 68-69, 176 P.3d 1249. The plaintiffs resisted the deposition, arguing that, as interpreted in Stevens , ORCP 36 B does not allow discovery of the names of experts who will be called to testify at trial or the substance of their testimony. Id. at 69, 176 P.3d 1249. The defendant acknowledged that the trial court had denied his request to depose Evers on the specific ground that the plaintiffs intended to call her as an expert. Id. at 71, 176 P.3d 1249. The defendant also acknowledged that, "in legal malpractice actions, expert testimony usually is permitted to establish the applicable standard of care." Id. However, the defendant argued that, regardless of whether Evers would provide an expert opinion about the applicable standard of care and whether the defendant's actions in representing Gwin met that standard, Evers also had another role in the case: Evers had been personally and directly involved with the plaintiffs' mitigation efforts, and, in that role, had knowledge of factual matters at issue in the case. Id. The defendant indicated that he would limit his questions to ones about the mitigation efforts that Evers had made. Id. at 70, 176 P.3d 1249.
This court issued a peremptory writ of mandamus commanding the trial court to withdraw its order and permit the deposition to proceed. Id. at 75, 176 P.3d 1249. This court reasoned as follows:
"On its face, ORCP 36 B(1) would appear to extend a right to depose or otherwise to obtain discovery from all potential witnesses (whose testimony is not privileged), including expert witnesses. However, as this court has **563 held, legislative context and history establish ineluctably that the scope of the rule was not intended to extend to expert witnesses. Stevens , 336 Or. at 400-05, 84 P.3d 140. Still, nothing in the wording of the rule, the decision in Stevens , or in any other case of which we are aware, suggests that a witness who has been personally or directly involved in events relevant to a case may not be deposed as to facts of which the witness has personal knowledge, simply because that person will be, as to other matters, an expert witness at trial."
Id. at 72, 176 P.3d 1249 (footnote omitted).
Thus, this court distinguished between Evers' two roles and the sources of information from which she was expected to testify: her role as a "fact" witness who has "obtained through one or more of [her] senses evidence relevant to a civil trial and pertaining to a material issue in that trial" and her role as an "expert" witness. Id. at 67 n. 1, 176 P.3d 1249. To qualify as a "fact" witness, the court explained, the witness must not have "obtained the evidence principally for the purpose of rendering an expert opinion in that trial." Id. The court permitted the defendant to question Evers as a "fact" witness about her "direct involvement in" or "observation of and derivative knowledge of the relevant events," but precluded the defendant from questioning Evers as an "expert" witness about facts that "either were or will be presented to her primarily for the purpose of *419 forming and rendering an expert opinion." Id. at 73, 176 P.3d 1249.
The basis for the distinction drawn in Gwin becomes apparent when we delve a bit more into the legislative history from which the court reasoned in Stevens . As discussed above, " ORCP 36 essentially tracks FRCP 26(b)" but "omits the specific authorization for expert discovery that FRCP 26(b) includes." Stevens , 336 Or. at 402, 84 P.3d 140. That omission, the court determined in Stevens , suggests that "Oregon intended to depart from the federal model and not authorize expert discovery." Id. Significantly, the federal rule did not address itself to the expert whose information was acquired because the expert was an actor with respect to occurrences that are the subject matter of the lawsuit. Advisory Committee Notes to 1970 Amendment to Rule 26(b). Rather, the drafters of the federal rule intended that such an expert "be treated as an ordinary witness." Id.
**564 The Council on Court Procedures was aware of that distinction when it drafted subsection (4) of ORCP 36 B. The genesis of that provision was a proposal by Richard Bodyfelt for mandatory exchange of expert reports. Minutes, Council on Court Procedures, Feb. 18, 1978, 2. Fred Merrill, a University of Oregon law professor and the Executive Director of the Council, prepared a memorandum for the Council that provided an extensive review of the problem of discovery of information held by an opponent's expert. Fred Merrill, "Discovery of Experts: Rule 26(b)(4) and the Bodyfelt Proposal," Memorandum submitted to Council on Court Procedures (1978); see Minutes, Council on Court Procedures, Feb. 18, 1978, 2 (noting that vote on Bodyfelt proposal deferred until Merrill had an opportunity to research the matter). In that memorandum, Merrill discussed FRCP 26(b)(4) and explained that it regulated three classes of experts: for experts expected to be called at trial, an opposing party could learn the identity of the expert and, by interrogatory, learn the substance of their testimony; for experts retained but not expected to be called at trial, an opposing party could obtain discovery only by showing exceptional circumstances; and for experts informally consulted but not expected to be called at trial, an opposing party could obtain no discovery at all. Memorandum at 9; see also FRCP 26(b)(4) (1970) (discussing rule for discovery of experts retained for litigation and expected to testify, and rule for discovery of experts retained but not expected to testify); Advisory Committee Notes to 1970 Amendment to Rule 26(b) (explaining that discovery of consulted but not retained expert is not permitted). Merrill explained that the federal rule did not regulate discovery for experts who were actors or viewers of occurrences that give rise to the action. See Memorandum at 9 (discussing commentary to FRCP 26(b) ); see also Advisory Committee Notes to 1970 Amendment to Rule 26(b) (explaining FRCP 26(b)(4) ). Thus, the Merrill memorandum explained the federal rule as regulating nonparticipating experts who acquire or develop facts or opinions in anticipation of litigation or for trial, and as not addressing participating experts who are actors in the action. After receipt of the Merrill memorandum, the Council decided not to adopt the Bodyfelt proposal and, instead, drafted subsection (4) of ORCP 36 B, which the legislature later deleted. Stevens , 336 Or. at 402, 84 P.3d 140.
**565 Stevens can be understood as recognizing a legislative intent to bar parties from discovering the identities of expert witnesses who fall into the classes of expert witnesses addressed in the federal rule and the Merrill memorandum-expert witnesses who acquired or developed facts or opinions in anticipation of litigation or for trial-and the substance of their opinions. However, as this court concluded in Gwin , Stevens cannot be understood as recognizing a legislative intent to bar discovery from the class of expert witnesses that the federal rule treated as "ordinary witnesses"-expert witnesses who acquired or developed facts or opinions as actors in the events at issue. Before that time, it was not uncommon for plaintiffs to depose expert witnesses whose conduct was at issue in an action. See, e.g. , Hansen v. Bussman , 274 Or. 757, 763-64, 549 P.2d 1265 (1976) (plaintiff deposed physician when conduct was at issue in negligence action); Ritter v. Sivils , 206 Or. 410, 424, 293 P.2d 211 (1956) (same);
*420 Malila v. Meacham , 187 Or. 330, 343, 211 P.2d 747 (1949) (same); Carruthers v. Phillips , 169 Or. 636, 640, 131 P.2d 193 (1942) (same); Felske v. Worland , 63 Or. App. 442, 444, 664 P.2d 427 (1983) (same).
In this case, defendant recognizes that the legislature did not intend to bar plaintiff from deposing the radiologists. Although defendant argues that Oregon does not permit expert discovery, it does not contend that, because the radiologists have knowledge and skill that would qualify them as experts under OEC 702,[3] plaintiff is barred from deposing them. Defendant acknowledges that, because the radiologists participated in plaintiff's care, plaintiff is entitled to depose them. Defendant also does not argue that any questions that call for the radiologists' opinions are beyond the scope of permitted discovery as seeking "expert testimony."[4]
**566 Defendant agrees that plaintiff may ask the radiologists questions about opinions that they formed when they participated in plaintiff's care and concurs with the Appellate Division of the New Jersey Superior Court that,
"[w]hatever the limits of discovery, there certainly should be included a full explanation of why defendants performed certain acts or did not perform them. Their findings and actual course of treatments, their diagnoses and their opinions as to the proper course of treatment, are legitimate subjects of inquiry. The opinions, of course, must relate to the treatment rendered [to the] plaintiff."
Rogotzki v. Schept , 91 N.J. Super. 135, 154, 219 A.2d 426, 436 (1966). Rather, the more nuanced argument that defendant presses is that plaintiff may not ask the radiologists questions that require "current application of their expert knowledge and training." Without explicitly stating its argument in these terms, defendant seems to contend that, because the radiologists do not remember their past observations and are asked to make current ones, they are no longer testifying as participant experts; instead, they are testifying as nonparticipant experts. Such questioning, defendant contends, is prohibited by Oregon's rule against expert discovery.
We agree with defendant that, if the radiologists had not participated in plaintiff's care, plaintiff would be precluded from deposing them and therefore could not ask them any questions at all. And we also agree that the fact that plaintiff is entitled to depose the radiologists does not give plaintiff authority to ask them questions that she would be prohibited from asking a radiologist who had not participated in her care. But we do not agree that the line between permitted and precluded questions depends on whether plaintiff asks the radiologists about what they saw and did in the past, or, instead, for the "current application of their expert knowledge and training." It is not expert knowledge and training that differentiates an expert who can be deposed (a participating expert) from one who cannot (a nonparticipating expert). Both have expertise; both may qualify as experts under OEC 702. And it is not the current application of expertise that is dispositive. As explained in Gwin , and reflected in the legislative history that underlies Stevens , an expert who acquires or develops facts or opinions **567 as a participant in the events at issue may be questioned about those events as an ordinary witness. Thus, under ORCP 36 B, a participating expert can be asked any questions relevant to his or her direct involvement in the events at issue. The fact that a participating expert also has expert qualifications does not alter or restrict the scope of the questions that he or she may be asked about his or her participation. In contrast, an expert witness who acquires or develops facts or opinions in anticipation of *421 litigation or for trial-a nonparticipating expert-cannot be asked any questions at all about those matters. A party cannot turn a participating expert into a nonparticipating expert and ask a participating expert about matters in which the participating expert was not directly involved. Thus, in Gwin , the court permitted the defendant to depose Evers about the events in which she participated. 344 Or. at 73, 176 P.3d 1249. Evers was an attorney, and the court did not bar the defendant from asking her questions that would require her to apply her expert knowledge and training. Instead, the questions that it placed off limits were questions that pertained to events in which Evers did not participate, but about which she had been informed for the purpose rendering an expert opinion at trial. Id.
In this case, we conclude that plaintiff was entitled to ask, and the radiologists were required to answer, questions about the radiologists' treatment of plaintiff and their review of her imaging studies in 2013, and, as we will explain, questions about what the radiologists could see in those studies in 2016.[5] In contrast, plaintiff would not be entitled to ask, and the radiologists would not be required to answer, any questions whatsoever about matters in which the radiologists did not participate. For example, plaintiff would not be entitled to ask Bageac about matters that plaintiff related and supplied to him, such as information about a third physician's treatment of plaintiff and studies on which that physician based her treatment. Plaintiff would not be entitled to ask Bageac about what that third physician should have seen in those studies or whether the third physician performed in accordance with the applicable standard of care.
**568 In reaching that conclusion, we return to the text of ORCP 36 B and the fact that, in promulgating that rule, the legislature set out the scope of discovery in civil actions, and, by its terms, chose to permit parties to obtain all relevant, unprivileged information. In interpreting that rule to permit plaintiff to question the radiologists about plaintiff's 2013 imaging studies, we align ourselves with other courts that permit a plaintiff to question a physician whose conduct is at issue in a medical negligence action about the physician's conduct, even if such questions call for their opinion or require current application of their expert knowledge and training. See Anderson v. Florence , 288 Minn. 351, 352, 181 N.W.2d 873, 874 (1970) (holding that plaintiff, during discovery, could question defendant physician even if questions called for expression of medical opinion); Rogotzki , 91 N.J. Super. at 153, 219 A.2d at 436 (same). In Anderson , the Supreme Court of Minnesota discussed how the traditional reasons for not allowing a party to elicit expert testimony from an opposing party's expert witness do not justify limits on questions to an allegedly negligent physician where the expert testimony sought relates to the care provided by that physician. The court explained that the argument that eliciting such testimony equates to "taking property without payment of compensation * * * loses its force when applied to the expert opinion of an adverse party himself[:]"
"In that situation, the concept of fairness embodied in the discovery rules *** clearly comprehends that the parties to an action who are eyewitnesses to and participants in the event giving rise to the action fully disclose to each other all matters relevant to the issues in dispute and available to them without regard to how the information was acquired, whether by special training or rendering professional service."
288 Minn. at 357, 181 N.W.2d at 877. And, the court explained, the "unfairness argument"
"has been discredited in recent cases. The courts assert that the question of unfairness to individuals should not be controlling, since the inquiry is directed to one who has been a participant in the occurrence and withholding relevant testimony by litigants obstructs the administration of justice."
**569 Id. at 360-61, 181 N.W.2d at 879 ; see also Oleksiw v. Weidener , 2 Ohio St. 2d 147, 150, 207 N.E.2d 375, 377 (1965) (stating that participating physician had a duty to testify if *422 his testimony will "provide facts which will aid the court in arriving at a just decision" and that "[a]ny loss to the sporting aspect of adversary proceedings would be outweighed by the benefit to the judicial system").
We are convinced that ORCP 36 B compels the same result. We therefore proceed to defendant's second argument-that plaintiff's questions seek irrelevant information and therefore should be prohibited.
B. Defendant's Argument that Plaintiff Seeks Irrelevant Information
Defendant's second argument is that the radiologists may not be compelled to testify to their current knowledge and ability to read plaintiff's imaging studies because their responses to plaintiff's questions would necessarily implicate hindsight, supplemented by information gained since the original reading of those studies. Defendant argues that the radiologists must be judged, not on what hindsight may reveal should have been done in the light of subsequently occurring conditions, but on the facts existing at the time they acted. See Foxton v. Woodmansee , 236 Or. 271, 278-79, 386 P.2d 659 (1963), reh'g den. , 236 Or. 271, 388 P.2d 275 (1964) (stating standard of care). Therefore, defendant contends, questions that call for their current observations and knowledge seek information that is not relevant or reasonably calculated to lead to admissible evidence.[6]
Defendant is correct that, in evaluating whether a physician was negligent, the physician must be judged based on the facts existing at the time the physician acted. Id. However, defendant is not correct that that makes questions **570 that implicate hindsight a basis for instructing a deponent not to answer a question or makes answers to those questions irrelevant.
ORCP 39 D(3) permits a party to instruct a deponent not to answer a question only in limited circumstances:
"Evidence shall be taken subject to [an] objection, except that a party may instruct a deponent not to answer a question, and a deponent may decline to answer a question, only:
"(a) when necessary to present or preserve a motion under section E of this rule; [7 ]
"(b) to enforce a limitation on examination ordered by the court; or
"(c) to preserve a privilege or constitutional or statutory right."
ORCP 39 D(3) (footnote added). Defendant's objection that the radiologists' answers would be affected by hindsight is not one of those circumstances. Thus, even if defendant's objection could be a basis for excluding the radiologists' testimony at trial, it is not a permissible basis for instructing the radiologists not to answer plaintiff's questions during their depositions.
Perhaps even more importantly, the questions that plaintiff asked the radiologists *423 in this case sought information reasonably calculated to lead to admissible evidence. Plaintiff asked the radiologists about scans and films that **571 existed at the time of plaintiff's care and that the radiologists had reviewed when they participated in her care. For instance, plaintiff asked Bageac about plaintiff's 2013 bone scan and what he could see in it at the time of his deposition. Although Bageac could not specifically remember examining that scan in 2013, his lack of memory does not make his present observations irrelevant. The scan is, as Foxton requires, one of the " 'pertinent facts then in existence.' " 236 Or. at 278, 386 P.2d 659 (citing Staloch v. Holm , 100 Minn. 276, 279, 111 N.W. 264, 265 (1907) ). Bageac's present-day ability to describe what he can see in that scan and his knowledge about the significance of what it shows may provide relevant information about what he perceived and knew in 2013. Although Bageac had additional information in 2016 that he did not have in 2013, his perceptions, knowledge, and abilities in 2016 still bear on his perceptions, knowledge, abilities and actions in 2013. Defendant does not convince us that the trial court correctly denied plaintiff's motion to compel. We now proceed to defendant's third and final argument, which concerns the attorney-client privilege.
C. Defendant's Argument that Plaintiff's Questions Interfere with the Attorney-Client Privilege
Defendant argues that the radiologists' testimony is privileged because a current reading of plaintiff's scans and films would be "affected by" information that defense counsel provided to the radiologists. In their declarations, the radiologists averred that, if they were required to answer questions about the 2013 scans and films, their answers necessarily would be informed and "affected by" the fact that plaintiff's breast cancer was initially staged as Stage II and later staged as Stage IV, by the knowledge that a lawsuit had been filed, and by "[i]nformation obtained from my attorneys in defense of this case." Defendant argues that the "information received from their counsel is privileged and therefore cannot be disclosed."
Plaintiff does not disagree with the latter statement. However, plaintiff contends that she does not seek disclosure of information that the radiologists received from **572 their counsel; instead, she seeks information about what the radiologists now see in plaintiff's imaging studies.
OEC 503(2) gives a client a privilege to refuse to disclose confidential "communications" between the client and the client's lawyer. It provides, in relevant part:
"(2) A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
"(a) Between the client or the client's representative and the client's lawyer or a representative of the lawyer; [or]
"(b) Between the client's lawyer and the lawyer's representative[.]"
OEC 503(2)(a)-(b). Neither defendant nor amicus Oregon Association of Defense Counsel cites a case that holds that the attorney-client privilege also grants a privilege to refuse to disclose information that, as defendant argues, may be "affected by" such communications.
As plaintiff explains, the ramifications of such a rule would be far-reaching. Many attorneys appropriately talk with their clients before they are deposed to educate them about the law and to take steps to make it more likely that they will understand the questions that may be posed so that clients can truthfully and accurately answer them, and thereby seek to "affect" their clients' testimony. We are not persuaded that OEC 503 is intended to preclude all deposition questions that follow. In this case, plaintiff asked the radiologists questions such as, "what do the two white spots on the scan represent?" Perhaps, as the radiologists averred, the answers to such questions could be "affected by" discussions with their attorneys, but such questions do not call for disclosure of attorney-client communications. Thus, OEC 503 does not provide a basis for the trial court's order denying plaintiff's motion to compel discovery.
*424 IV. CONCLUSION
We conclude that plaintiff's questions about the radiologists' current "knowledge and ability to read and interpret" plaintiff's imaging studies are relevant, do not **573 exceed the scope of discovery permitted by Oregon law, and do not interfere with the attorney-client privilege. Accordingly, we hold that a peremptory writ of mandamus should issue directing the circuit court to enter an order allowing plaintiff to ask such questions.
A peremptory writ of mandamus shall issue.
Landau, S.J., concurred and filed an opinion.
Nakamoto, J., dissented and filed an opinion, in which Balmer and Duncan, JJ., joined.

Plaintiff also named Legacy Health as a defendant.

Defense counsel consistently instructed the radiologists not to answer any questions that called for them to state what they could see, in 2016, on the imaging studies that they had reviewed in 2013. For instance, when plaintiff asked Divine, "do you see arrows that are pointing to black spots," counsel instructed him not to answer.

OEC 702 provides:
"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

The Oregon Evidence Code permits both expert and lay witnesses to testify in the form of an opinion. OEC 701 ; OEC 702. However, when a lay witness testifies to an opinion, the opinion must be rationally based on the witness's perception. OEC 701(1). An expert, on the other hand, may base an opinion either on the expert's perceptions or on facts or data "made known to the expert at or before" the witness testifies in court. OEC 703.

We do not address whether any other questions that plaintiff may have posed or intends to pose in the future are within the permitted scope of discovery.

We note that, as plaintiff states in her brief in this court, defendant objected in the trial court and instructed the radiologists not to answer "on the basis that such questions impermissibly sought expert opinion, which is not discoverable pursuant to ORCP 36, and for the separate and distinct reason that some of plaintiff's questions called for information that is protected by the attorney-client privilege." It is therefore possible that defendant did not preserve in the trial court the argument that it urges. However, because plaintiff does not press that issue, and because we reject defendant's argument on the merits, we need not further explore the preservation issue here.

ORCP 39 E(1) provides:
"Motion for court assistance. At any time during the taking of a deposition, upon motion and a showing by a party or a deponent that the deposition is being conducted or hindered in bad faith, or in a manner not consistent with these rules, or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or any party, the court may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope or manner of the taking of the deposition as provided in section C of Rule 36. The motion shall be presented to the court in which the action is pending, except that non-party deponents may present the motion to the court in which the action is pending or the court at the place of examination. If the order terminates the examination, it shall be resumed thereafter only on order of the court in which the action is pending. Upon demand of the moving party or deponent, the parties shall suspend the taking of the deposition for the time necessary to make a motion under this subsection."